PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN BAILEY,                                    )
                                                )    CASE NO.  4:23CV0993
            Plaintiff,                          )
                                                )
      v.                                        )    JUDGE BENITA Y. PEARSON
                                                )
SHEET METAL, AIR, RAIL, AND                     )
TRANSPORTATION ASSOCIATION                      )
LOCAL UNION NO. 33 YOUNGSTOWN                    )
DISTRICT PENSION FUND,                          )
                                                )    **FINDINGS OF FACT AND**
            Defendant.                          )    **CONCLUSIONS OF LAW**


      This matter is before the Court upon competing briefs for judgment on the administrative

record (ECF Nos. 17 and 20)[1] of Plaintiff John Bailey and Defendant Sheet Metal, Air, Rail, and

Transportation Association Local Union No. 33 Youngstown District Pension Fund (the "Fund")

pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§ 1001 *et seq.*, as amended.

---

[1]  Pursuant to the Case Management Plan (ECF No. 14), Plaintiff also filed a reply
brief (ECF No. 22) and the parties filed Proposed Findings of Fact and Conclusions of
Law.  *See* ECF Nos. 21 and 23.

(4:23CV0993)

After considering the parties' positions regarding the Amended Administrative Record (ECF No. 19)[2] in accordance with *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman J. concurring), the Court finds in favor of Defendant based on the following Findings of Fact and Conclusions of Law.

## I. Findings of Fact

1. Plaintiff is a participant in and beneficiary of the Fund.  Plaintiff was a member of the Sheet Metal, Air, Rail and Transportation Workers ("SMART") Local No. 33 Union.  SMART Local No. 33 is one of the settlor's to the Fund.

2. Defendant is a pension trust fund that provides pension benefits to SMART Local No. 33 participants and beneficiaries pursuant to the terms of the participant's collective bargaining agreements and the Fund agreement under the terms of  ERISA.

3. Plaintiff retired effective August 1, 2020 at age 57.  *See* ECF No. 19 at PageID #: 991; 992.

4. At all times relevant to this case, the eligibility and criteria for retirement and suspension of retirement benefits are located at Sections 6.06 and 6.07 of the Fund's Pension Plan Rules and Regulations as Amended and Restated Effective January 1, 2015 (the "Rules"). *See* ECF No. 19 at PageID #: 1221-25.

---

[2]  In compliance with ¶ 8 of the Case Management Plan (ECF No. 14 at PageID #: 107) and Electronic Filing Policies and Procedures Manual (Feb. 10, 2020) at §§ 19 and 24, Defendant filed the Amended Administrative Record (ECF No. 19) under seal.

(4:23CV0993)

5. Section 6.07(a)(i) of the Rules defines "Disqualifying employment" during retirement as:

(A)     Employment in work of any type covered by the terms of the Collective Bargaining Agreement in effect between the Union and the Employers, or in any type of *work normally performed by sheet metal workers* . . .; or
(B)     Employment as described in (a) above for an employer in the *same or related business as any Contributing Employer*; or
(C)     Self-employment in the same or related business as any Contributing Employer; or
(D)     Employment or self-employment in any work which is under the jurisdiction of the Union.

ECF No. 19 at PageID #: 1222 (emphasis added).

6. The clear and unambiguous language of Section 6.02(a) of the Rules grants discretionary authority to the Trustees to interpret the terms of the Plan.  The Rules state:  "The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan, and the decisions of the Trustees shall be final and binding on all parties."  ECF No. 19 at PageID #: 1215.

7. Plaintiff has been working for Hickey Metal Fabrication in Salem, Ohio since October 2013.  *See* ECF No. 19 at PageID #: 1310; 990.

8. Plaintiff submitted his Application for Retirement Benefits on July 8, 2020 at the age of 57.  *See* ECF No. 19 at PageID #: 992-98.

9. Plaintiff's effective date of retirement was August 1, 2020, but Plaintiff stated he had last worked in July 2007.  *See* ECF No. 19 at PageID #: 992.

10. Plaintiff attested in his Affidavit of Termination, submitted with his Application for Retirement Benefits:  "I am not working in the sheet metal trade or work generally related to the

3

(4:23CV0993)

trade and craft which is performed within the geographical area covered by the Plan. . . ." ECF No. 19 at PageID #: 997.

11.  Plaintiff, however, did attest he was employed as a welder at Hickey Metal Fabrication.  *See* ECF No. 19 at PageID #: 997.

12.  On November 23, 2020, the Board of Trustees requested that Plaintiff provide a description of his job duties at Hickey Metal Fabrication.  *See* ECF No. 19 at PageID #: 1315.

13.  On December 20, 2020, Plaintiff responded to the request, describing his duties as a "welder that welds parts for wrecker and semi wreckers such as:  spade tubes, crossmembers, cylinder boxes, cable guides, hinge angles, L-Arms, and wheel grids."  ECF No. 19 at PageID #: 1314.

14.  At a meeting of the Board of Trustees for the Fund on February 1, 2021, the Board reviewed Plaintiff's description of his duties at Hickey Metal Fabrication and determined that "the work described is disqualifying employment."  ECF No. 19 at PageID #: 1334.

15.  On March 5, 2021, the Plan Manager issued a letter to Plaintiff informing him that his work at Hickey Metal Fabrication constituted disqualifying employment under the Plan and that his pension benefits were being suspended.  *See* ECF No. 19 at PageID #: 1312-13.  The letter also provides:  "The Plan provides that any pension benefit paid during a period in which a pensioner was engaged in suspendible employment must be repaid.  Therefore, the benefits you were paid from August 2020-December 2020, in the amount of $4,533.80 (5 months x $906.76) must be repaid."  ECF No. 19 at PageID #: 1312.

4

(4:23CV0993)

16.  The Plan Manager also informed Plaintiff he had until August 19, 2021 to appeal this decision.  *See* ECF No. 19 at PageID #: 1313.

17.  Prior to this suspension, Plaintiff's monthly pension benefit was determined to be $906.76.  *See* ECF No. 19 at PageID #: 991.

18.  Plaintiff received five (5) monthly pension checks totaling $4,533.80 before his pension benefits were suspended.  *See* ECF No. 19 at PageID #: 1312.

19.  On April 29, 2021, Plaintiff, through his counsel, appealed the suspension of his benefits, arguing that his work at Hickey Metal Fabrication did not constitute "disqualifying employment" as it was not related to sheet metal work.  *See* ECF No. 19 at PageID #: 1307-11.

20.  An Affidavit of Plaintiff (ECF No. 19 at PageID #: 1310) and an Affidavit of Jeremy Fender (ECF No. 19 at Page ID #: 1311) are attached to the appeal of the suspension of benefits. Fender is Plaintiff's supervisor at Hickey Metal Fabrication.

21.  At a meeting of the Board of Trustees on May 3, 2021, the Board reviewed Plaintiff's appeal.  *See* ECF No. 19 at PageID #: 1329.

22.  On May 20, 2021 the Board of Trustees, through its attorney, drafted a letter to Plaintiff's counsel stating that Plaintiff's appeal was denied.  *See* ECF No. 19 at PageID #: 1350-52; 989-90.[3]

23.  The May 20, 2021 letter states, in relevant part:  "Hickey Metal Fabrication is a metal fabrication shop, and thus an employer in the same or related business as employers contributing

---

[3]  The letter was also reviewed during the August 9, 2021 meeting of the Board of Trustees.  *See* ECF No. 19 at PageID #: 1323.

5

(4:23CV0993)

to the Fund, and this work is also work in the jurisdiction of the Union.  Therefore, the benefits are suspendible." ECF No. 19 at PageID #: 990.  The letter also advised Plaintiff of his right to bring a civil action for benefits under Section 502 of ERISA, 29 U.S.C. § 1132, to contest the decision.  *See* ECF No. 19 at PageID #: 990.

24.  Plaintiff filed a Complaint (ECF No. 1 at PageID #: 12-16) in the Columbiana, Ohio Court of Common Pleas, being Case No. 2023 CV 00168.  Defendant timely removed the case to this Court on the basis of federal question jurisdiction conferred by 28 U.S.C. § 1331.  *See* Notice of Removal (ECF No. 1).

25.  Thereafter, Plaintiff filed an Amended Complaint (ECF No. 7), which challenges the Trustees' denial of his appeal of the suspension of benefits.

## II. Conclusions of Law

1.  Plaintiff brings his claim under 29 U.S.C. § 1132(a)(1)(B).  *See* ECF No. 7 at PageID #: 76, ¶ 6.

2.  Plaintiff's claim for benefits must be decided under ERISA's arbitrary and capricious standard based upon the administrative record presented to the Trustees when they denied his appeal.  *Wilkins, supra*.

3.  The *Wilkins* guidelines will be used when applying an arbitrary and capricious standard of review to the administrator's decision.  *See Beardman v. Sheet Metal, Air, Rail, & Trans. Association Local Union No. 33 Youngstown Dist. Pension Fund*, No. 4:20CV2149, 2022 WL 950094, at *6 (N.D. Ohio March 30, 2022) (Pearson, J.) (citing *Price v. Bd. of Trs. of Ind. Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011)).

(4:23CV0993)

4. When trustees of an ERISA plan are vested with discretionary authority by the plan documents to construe plan terms, their decision will not be overturned unless it was an abuse of discretion. *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).

5. In cases involving challenges to an ERISA plan administrator's benefits determination, "the court shall review the plan administrator's decision under the arbitrary and capricious standard," when "the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms." *Goad v. Lockheed Martin Energy Sys., Inc.*, 8 Fed.Appx. 524, 527 (6th Cir. 2001) (quoting *Firestone Tire & Rubber Co.*, 489 U.S. at 102).

6. The Trustees have the necessary discretion to apply the ERISA arbitrary and capricious standard to their decision denying Plaintiff's appeal of the suspension of his benefits. The reviewing court does not have to agree with the Trustees. When they can offer a reasonable explanation based on the evidence, their decision is not arbitrary and capricious. *Beardman* 2022 WL 950094, at *6 (citing *Taylor v. Central States Pension Fund*, No. 92-1350, 1993 WL 190915, at *2 (6th Cir. June 3, 1993), *cert. denied*, 510 U.S. 978 (1993); *Gardner v. Central States, Southeast & Southwest Areas Pension Fund*, No. 93-3070, 1993 WL 533540, at *7 (6th Cir. Dec. 21, 1993); *Whisman v. Robbins*, 55 F.3d 1140, 1144 (6th Cir. 1995)); *see also Bukovac v. Central States Pension Fund*, No. 4:14CV2750, 2016 WL 6268086, at *8 (N.D. Ohio Sept. 20, 2016) (Pearson, J.).

7. In applying the arbitrary and capricious standard, a court will factor in whether a conflict of interest existed on the part of the decision-maker. *Id.* at *7 (citing *Metropolitan Life*

(4:23CV0993)

*Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008)); *see also Bukovac*, 2016 WL 6268086, at *8.

Indeed, if a plan administrator's decision is rational in light of the plan provisions, a denial of

benefits will be affirmed. *Id.* (citing *Talmon v. Central States, Southeast & Southwest Areas*

*Pension Fund*, 232 Fed.Appx. 467, 468 (6th Cir. 2007); *Lewis v. Central States, Southeast &*

*Southwest Areas Pension Fund*, 484 Fed.Appx. 7, 12 (6th Cir. 2012)).

      8. The Trustees have an obligation to maintain the actuarial soundness of the Pension

Plan and not to pay pensions that violate the terms of the Plan. *Id.* (citing *Love v. Central States,*

*Southeast & Southwest Areas Pension Plan*, No. 1:11-cv-275-HJW, 2012 WL 1081460, at *4

(S.D. Ohio March 30, 2012)); *see also Bukovac*, 2016 WL 6268086, at *8.

      9. A trial court's review of a denial of ERISA governed benefits challenged under

29 U.S.C. §1132(a)(1)(B) is *de novo* unless "the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

*Firestone Tire & Rubber Co.*, 489 U.S. at 115; *Shelby Cnty. Health Care Corp. v. Southern*

*Council of Industrial Workers & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000).

      10. When a plan accords trustees' discretionary authority to determine eligibility for

benefits or to interpret the terms of the plan, the trustees' decision to deny benefits is to be

accorded deference and the district court is required to review that decision under an "arbitrary

and capricious" standard. *Firestone Tire & Rubber Co.*, 489 U.S. at 111; *Heil v. Nationwide Life*

*Ins. Co.*, No. 92-3091, 1993 WL 428861, at *2 (6th Cir. Oct. 21, 1993) (citing *Callahan v. Rouge*

*Steel Co.*, 941 F.2d 456 (6th Cir. 1991)).

(4:23CV0993)

11.  The arbitrary and capricious standard is "extremely deferential" and "the least demanding form of judicial review." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (quoting *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1107-108 (7th Cir. 1998)).

12.  "Because arbitrary-and-capricious review of a plan administrator's denial of benefits is 'highly deferential,' we do not upset a denial 'so long as it is possible to offer a reasoned explanation, based on the evidence, for that particular outcome.'" *Martin v. Fed. Rsrv. Bank of Cleveland*, --- F.4th ----, 2026 WL 1256663, at *10 (May 7, 2026) (quoting *Likas v. Life Ins. Co. of N. Am.*, 222 Fed.Appx. 481, 487 (6th Cir. 2007)).

13.  Under an arbitrary and capricious standard, the court does not decide whether the trustees correctly decided to deny benefits; rather, the court decides whether there was sufficient evidence in the administrative record to allow the trustees' denial of benefits under the plan. *Buha v. United Food & Commercial Workers Int'l Union-Indus. Pension Fund*, 77 Fed.Appx. 347, 350 (6th Cir. 2003).

14.  A decision of an ERISA benefit plan administrator that is rational or reasonable must be left undisturbed.  Thus, even if the court disagrees, it may not interfere with a decision that was reasonable in light of the plan's provisions. *Miller v. Metropolitan Life Ins.*, 925 F.2d 979, 984 (6th Cir. 1991).  This discretion includes determining issues like whether a participant's employment constitutes disqualifying employment or when making decisions on appeal.

15.  Trial courts are to enter judgment upholding or denying the plan administrator's decision by rendering findings of fact and making conclusions of law based solely on the

(4:23CV0993)

administrative record.  *Wilkins*, 150 F.3d at 619; *see also Eriksen v. Metropolitan Life Ins. Co.,* 39 F. Supp.2d 864, 865-66 (E.D. Mich 1999).

16.  A pension plan may provide for the suspension of benefits which commence prior to the attainment of normal retirement age for any reemployment.  *Whisman*, 55 F.3d at 1146-47.

17.  A participant who elects to retire prior to age 65 does not enjoy statutory protection from having his pension rights suspended based upon disqualifying employment.  *Dennis v. Bd. of Trs. of Food Emp'rs Labor Relations Ass'n*, 620 F. Supp. 572, 575-76 (M.D. Pa. 1985).

18.  Section 6.07(a)(i) of the Fund's Pension Plan Rules and Regulations as Amended and Restated Effective January 1, 2015 (the "Rules") states that benefits may be suspended for early retiree benefits when they engage in "disqualifying employment."  The Rules define "disqualifying employment" as any of the following:

> (A)      Employment in work of any type covered by the terms of the Collective Bargaining Agreement in effect between the Union and the Employers, or in any type of work *normally performed by sheet metal workers . . .*; or
> (B)      Employment as described in (a) above for an employer in the *same or related business as any Contributing Employer*; or
> (C)      Self-employment in the same or related business as any Contributing Employer; or
> (D)      Employment or self-employment in any work which is under the jurisdiction of the Union.

ECF No. 19 at PageID #: 1222 (emphasis added).

19.  Plaintiff listed his duties at Hickey Metal Fabrication as a "welder that welds parts for wrecker and semi wreckers such as:  spade tubes, crossmembers, cylinder boxes, cable guides, hinge angles, L-Arms, and wheel grids."  ECF No. 19 at PageID #: 1314.

10

(4:23CV0993)

20.  Section 1.23 of the Rules defines "Sheet Metal Work" as "[a]ll work performed by apprentices and journeymen under the Collective Bargaining Agreement between the Sheet Metal and Roofing Contractors of Eastern Ohio and Western Pennsylvania and Union, excluding the work performed under an Addendum to this Collective Bargaining Agreement covering Industrial Fabricating and Manufacturing or Residential Work."  ECF No. 19 at PageID #: 1183.

21.  Section 1.12 of the Rules defines "Industrial Fabricating and Manufacturing Work" as "[a]ll work performed by Employees under the Collective Bargaining Agreement between the Sheet Metal and Roofing Contractors of Eastern Ohio and Western Pennsylvania and Union Addendum on Industrial Fabricating and Manufacturing Work which generally includes fabrication work for air pollution control systems, noise abatement materials, process exhaust systems and all other industrial work excluding air conditioning, heating, ventilating, and architectural sheet metal work."  ECF No. 19 at PageID #: 1181.

22.  Section 1.06 of the Rules defines a "Contributing Employer or Employer" as "an Employer signatory to a Collective Bargaining Agreement with the Union requiring contributions to this Fund, and an Employer signatory to any other agreement requiring contributions to this Fund provided the Employer has been accepted as a Contributing Employer by the Trustees. 'Employer' shall also mean the Union, the Pension Fund, the Sheet Metal Workers Local No. 33, Youngstown District Health and Welfare Fund and the Youngstown and Vicinity Sheet Metal Workers Joint Apprenticeship Committee.  An employer shall not be deemed a Contributing Employer simply because it is part of a controlled group of corporations or of a trade or business

11

(4:23CV0993)

under common control, some other part of which is a Contributing Employer." ECF No. 19 at PageID #: 1180.

23.  The Collective Bargaining Agreement ("CBA") between Sheet Metal and Roofing Contractors Chapter of Eastern Ohio and Western Pennsylvania and Local Union No. 33 Youngstown District of the International Association of Sheet Metal, Air, Rail and Transportation Workers identifies welding as covered work and explicitly references welders within the scope of work in multiple sections, including but not limited to classifications of employees, tools, protective equipment, conditions of employment, and permissible work for each classification of sheet metal worker.  *See* ECF No. 19 at PageID #: 1413; 1415; 1428.

24.  Specifically, Section 6(b) of Addendum G of the CBA provides that employers shall furnish to their members protective equipment for welding, including leather sleeves, goggles, welding gloves, and welding hoods.  *See* ECF No. 19 at PageID #: 1413.

25.  The CBA also has a section entitled "WELDING," wherein it states that no journeyman or apprentice welder shall work alone when elevated or below ground.  *See* Section 11 of Addendum G (ECF No. 19 at PageID #: 1415).

26.  Finally, Article III, Section 3(a) of the CBA states that "Industrial Class B sheet metal workers are permitted to perform as welders. . . ." ECF No. 19 at PageID #: 1428.

27.  Plaintiff's description of his employment at Hickey Metal Fabrication, *see* ECF No. 19 at PageID #: 1314, falls within Section 6.07(a)(i)(A) of the Rules as welding is "work normally performed by sheet metal workers." ECF No. 19 at PageID #: 1222.

(4:23CV0993)

28.  The CBA's definition of "scope of work" in Article I, Section 1 includes among others, the "manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or non-ferrous metal work."  ECF No. 19 at PageID #: 1358.

29.  As such, Plaintiff's description of his employment at Hickey Metal Fabrication, *see* ECF No. 19 at PageID #: 1314, also falls under Section 6.07(a)(i)(B) of the Rules.  ECF No. 19 at PageID #: 1222.

30.  "Under ERISA, a pension fund may condition benefits on an employee's promise not to engage in certain types of postretirement employment.  If a retiree returns to work 'in the same industry, in the same trade or craft, and the same geographic area covered by the plan,' ERISA permits the fund to suspend the retiree's benefits for as long as he remains in that employment. 29 U.S.C. § 1053(a)(3)(B)(ii); *see* 29 C.F.R. § 2530.203-3."  *Helgemo v. Operating Engineers Local 324 Pension Fund*, No. 21-2951, 2022 WL 670139, at *1 (6th Cir. March 7, 2022).  "The term 'industry' means the business activities of the types engaged in by any employers maintaining the plan."  29 C.F.R. § 2530.203-3(c)(2)(i).

31.  Therefore, Plaintiff's employment as a welder would necessarily qualify as within the "same or related business as any Contributing Employer."  ECF No. 19 at PageID #: 1222.

32.  A reasonable interpretation of the Plan is that "disqualifying employment," by reference to the definitions included within the Rules and CBA, means that a participant cannot engage in employment as a welder and continue to receive early retirement pension benefits.

13

(4:23CV0993)

33.  Defendant reasonably concluded that Plaintiff was not entitled to early retirement benefits and suspended said benefits once the particulars of Plaintiff's employment were discovered.

34.  The Court finds Defendant's decision to suspend Plaintiff's pension benefits because his work at Hickey Metal Fabrication constitutes disqualifying employment under the Plan was not arbitrary and capricious.  Judgment is rendered in favor of Defendant Sheet Metal, Air, Rail, and Transportation Association Local Union No. 33 Youngstown District Pension Fund and against Plaintiff John Bailey.


IT IS SO ORDERED.


  May 19, 2026                          /s/ Benita Y. Pearson
Date                                    Benita Y. Pearson
                                        United States District Judge

14